# 99 DTA 185

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL I – SAN JUAN
## PANEL III

AWILDA CORREA DELIZ, POR SI Y EN REPRESENTACION
DEL MENOR RAMON ANTONIO GONZALEZ CORREA
Demandante-Recurrente

v.

MANUEL CORREA DELIZ, SONIA COLON
Demandados-Recurridos

Núm. KLCE-99-00432

San Juan, Puerto Rico, a 19 de mayo de 1999

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Brau Ramírez y Urgell Cuebas

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se recurre, vía *certiorari* de Resolución y Orden dictada el 4 de mayo de 1999 por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la causa KPE-99-1102 (907).

**Hechos**

**I**

La peticionaria, Sra. Awilda Correa Deliz, informa ser residente de Salinas, Puerto Rico, y madre de los menores Ramón Antonio y María Verónica González Correa, nacidos el 17 de enero de 1990 y 27 de marzo de 1991, respectivamente. Informa también que en el 1997 *"...entregó los menores a los demandados quienes han tenido a los menores en su custodia desde entonces."* La Sra. Sonia Colón es la esposa del co-demandado, Sr. Manuel Correa Deliz y éste, a su vez, es hermano de la demandante y, por tanto, tío de los menores.

La Sra. Awilda Correa Deliz indica que el padre de su hijo Ramón Antonio e hija María Verónica lo es el Sr. Ramón Antonio González Quiles, quien fuera su compañero consensual y que la entrega de ambos niños a los demandados respondió a su incapacidad para mantener empleo debido a previa convicción por el delito de apropiación ilegal, por el que cumple tres años en probatoria, a concluir en junio de 1999.

El litigio versa únicamente en torno al menor Ramón Antonio, que cuenta con nueve años de edad y padece de afección cardiovascular congénita, señalada como *"coartación en la aorta y dos soplos en el ventrículo izquierdo"*, por lo cual y desde que nació ha sido atendido por el Dr. Espinosa, cardiólogo pediátrico del Centro Cardiovascular en el Centro Médico de Puerto Rico. En diciembre de 1998, el Dr. Espinosa determinó que Ramón Antonio tiene que ser intervenido quirúrgicamente, lo que recomendó se hiciese en o para junio de 1999.

Ante ello y sin que en el escrito se ofrecieren fechas, los demandados iniciaron una campaña televisiva por los canales 4 y 11 de televisión con propósito de obtener fondos para costear tal operación. La demandante también se comunicó con entidades benéficas con el mismo propósito y al gestionar un certificado médico requerídole, el Dr. Espinosa le informó que tal recaudación de fondos no era necesaria, puesto que la operación no conllevaría gasto para la familia del menor en el Centro Cardiovascular del Centro Médico. Ello motivó que la demandante solicitare de los demandados explicaciones para la colecta y al no recibirla se comunicó con los medios noticiosos para que descontinuasen la promoción de tal gestión.

Así las cosas, alega la parte promovente que el 2 de mayo de 1999 el Sr. Manuel Correa Deliz informó a su hermana y madre del menor, Sra. Awilda Correa Deliz, que el 5 de mayo de 1999 Ramón Antonio sería trasladado a un hospital de Miami, estado de la Florida, E.U.A. donde sería evaluado con propósito de proceder a la intervención quirúrgica necesaria. Ante su pregunta de que porqué fuera de Puerto Rico, la demandante alega que se informó *"...que en el Hospital de Miami practicaban la intervención quirúrgica sin transfundir sangre, lo cual es cónsono con las creencias religiosas del demandado."* (Alegación Número 23 de la Demanda ante Instancia, Anejo II, pág. 5).

La demandante objetó y señaló que *"...no consentía a que el menor fuera expuesto a una operación que implicaba mayor riesgo por las creencias religiosas del demandado"*, y entendía que *"...el menor estaría mejor atendido en Puerto Rico, dado que el médico que lo intervendría sería el que ha tratado la condición del menor desde que éste nació."* ■ (Alegaciones Número 24 y 25 de la Demanda ante Instancia, Anejo II, Pág. 5)

La demandante también informa que los co-demandados *"...ostentan la custodia temporera [de ambos menores] en virtud de una resolución emitida por el Tribunal de Primera Instancia, Sala de San Juan, bajo el caso número 97-1448 sobre Ley 140"*. (Alegación Número 2 de la Demanda ante Instancia, Anejo II, Pág. 3) aunque no incluyó copia de la misma en el Apéndice, por lo que desconocemos de sus términos específicos.

La demanda ante Instancia fue presentada en la mañana del 4 de mayo de 1999 y en dicho mismo día instancia denegó la expedición del auto de *mandamus* (por no existir deber ministerial) y el de entredicho *"injunction"* por entender que lo que se solicitaba era de naturaleza interlocutoria, hasta que *"...el tribunal pueda dictar en un procedimiento para dilucidar la custodia de los hijos menores de la demandante."* Por ello, el hermano foro de instancia, también dictaminó que *"el expediente será prontamente referido al juez administrador auxiliar a cargo de asuntos de lo civil para ser asignado a la sala que corresponda."* De tal forma Instancia desestimó recurso de *mandamus*, declinó entender en causa de interdicto al amparo de la Regla 57 de Procedimiento Civil (32 L.P.R.A. Ap. III), dispuso trámite respecto a custodia y de inmediato ordenó el traslado del expediente ante la atención del Juez Administrador para simultánea reasignación a Sala de Relaciones de Familia.

De todo ello recurre la peticionaria el día 5 de mayo de 1999 a la 1:19 PM, e imputa la comisión de los

siguientes dos errores:

"1. Erró el Tribunal de Primera Instancia al declarar No Ha Lugar el entredicho provisional concluyendo que la petición no era otra cosa que un remedio en aseguramiento de la sentencia que, en su día, el Tribunal pudiese dictar en un procedimiento para dilucidar la custodia de los hijos menores de la parte demandante.

2. Erró el Tribunal de Primera Instancia al concluir que dado el interés público a salvaguardar, el cual era el bienestar de los menores, el asunto debe ser atendido por una de las Salas de Relaciones de Familia, de suerte tal que el Magistrado o la Magistrada que fueren a entender en la determinación de custodia pudiesen emitir los remedios provisionales que protejan dicha jurisdicción y la eventual determinación de dicho foro."

La peticionaria, mediante Moción en Auxilio de Jurisdicción de igual fecha solicitó que "... ordenemos a los tíos demandados que no saquen al menor fuera de Puerto Rico y a la Policía en los Aeropuertos de Puerto Rico que tomen conocimiento de las órdenes del Tribunal e impidan cualquier intento de sacar al menor fuera de nuestra jurisdicción."

Consta de autos que tanto la Petición de *Certiorari* como la Moción en Auxilio se notificó "...a Manuel Correa Deliz mediante mensajero a su dirección física Camino Los Castro, final, Cupey Bajo, San Juan, Puerto Rico."

El 6 de mayo de 1999 acogimos la moción en auxilio, prohibimos la salida de Puerto Rico en cuanto al menor y concedimos término a la parte demandada-recurrida por la cual no debíamos expedir el auto de *certiorari* para revocar o modificar la resolución recurrida.

## II

Los esposos Correa-Colón han comparecido el 12 de mayo de 1999 mediante abogados de Servicios Legales de Puerto Rico y exponen que en su hogar conviven con sus tres hijos del matrimonio junto a sus sobrinos Ramón y María, cuya custodia recibieron de manos del padre biológico de éstos, Sr. Ramón González, luego de que ambos fueran abandonados por la madre en un lugar de comercio (lechonera) por razón de que entonces tenía que huir de las autoridades. Desde entonces los cinco menores (hijos y sobrinos) reciben iguales atenciones, cariño y trato.

Señalan, también, que aunque el padre biológico no puede hacerse cargo de ellos, convive muy cerca. Respecto al viaje a la ciudad de Miami, informan que:

"Es correcto que en el Centro Médico Universidad de Miami/Jackson Memorial existe un programa de cuidado médico y quirúrgico especial para pacientes adultos que no deseen recibir transfusiones de sangre. Pero con respecto al tratamiento de menores, se tiene que tomar en cuenta las disposiciones de ley, (estatal y federal) que imponen limitaciones sobre la facultad de retener o abstenerse de hacer transfusiones de sangre o terapia de sangre en menores, especialmente en situaciones donde peligra la vida."

Para ello cuentan con un referido del Dr. A. F. Espinosa López, médico del menor en el Centro Cardiovascular de Puerto Rico; señalan también que el padre del menor con patria potestad le acompañaba y que está en completo acuerdo con la obtención de una segunda evaluación médica en el Jackson Memorial y que luego de la consulta llevarían al menor a Disney World, en Orlando, para un poco de distracción antes del regreso a Puerto Rico. Finalmente exponen en cuanto al señalamiento de errores y específicamente en torno a la determinación del foro de instancia al no actuar respecto a la petición bajo la Regla 57.1 de Procedimiento Civil ("Injunction Provisional"). Opinan que se actuó correctamente, puesto que en tal momento Instancia carecía de jurisdicción

sobre los co-demandados y tampoco la petición exponía conforme a derecho, para que se pudiese conceder remedio alguno al amparo de la Regla 57.2. (Entredicho Preliminar).

Estamos en posición de resolver.

## Exposición y Análisis

La parte recurrente reconoce que *"debido a la premura con que se preparó la acción incoada ante Instancia, por error se designó el escrito como "Injunction y/o Mandamus", pero no trasciende tal error de ser una mera etiqueta pues en las alegaciones bajo juramento, la acción es claramente una de injunction"*. (Alegación 26 de la Petición, pág. 3). Por otro lado, resulta obvio que a falta de deber ministerial no cabe la causa en *Mandamus*.

Atendemos en conjunto ambos señalamientos de error.

**I**

Como se sabe, el artículo 677 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3523, dispone:

*"§ 3523. Motivos para el injunction*

*Puede concederse un injunction en los siguientes casos:*

*"(1) Cuando resultare de la petición que el peticionario tiene derecho al remedio solicitado, y dicho remedio, o parte del mismo, consistiere en impedir la comisión o continuación del acto denunciado, bien por un período de tiempo limitado, o perpetuamente.*

*(2) Cuando de la petición o declaración jurada resultare que la comisión o continuación de algún acto, durante el litigio, habrá de causar pérdidas o daños de consideración o irreparables a alguna de las partes.*

*(3) Cuando, durante el litigio, resultare que una de las partes está cometiendo, o amenaza cometer, o que se dispone a cometer, o a procurar o permitir que se cometa, algún acto de contrario a los derechos de otra de las partes, con respecto al asunto en litigio y tendente a hacer que sea ineficaz la sentencia.*

*(4) Cuando una compensación pecuniaria no habría de proporcionar adecuado remedio.*

*(5) Cuando fuere sumamente difícil precisar la cuantía de la compensación que habría de proporcionar remedio adecuado.*

*(6) Cuando la restricción fuere necesaria para impedir una multiplicidad de procedimientos judiciales.*

*(7) Cuando la obligación naciere de un fideicomista".*

Por otro lado, nuestro ordenamiento procesal civil también autoriza la expedición de *"una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquiera otra medida que estime apropiada, según las circunstancias del caso,* ▮ *conforme al postulado de la Regla 56.5 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 56.5."* A tal respecto *"No se concederá ninguna orden bajo esta Regla 56 para hacer o desistir de hacer cualquier acto específico, sin una notificación a la parte adversa, a menos que aparezca claramente de los hechos específicos acreditados por declaración jurada que el solicitante sufrirá perjuicios, daños o pérdidas irreparables antes de notificarse y de celebrarse una vista sobre la solicitud."* En la Regla 57 del mismo cuerpo

normativo procesal, también se atiende y se pauta el *"injunction"* en su etapa de disposición provisional, preliminar y permanente.

Ello significa que en esta jurisdicción el entredicho es asequible como medida provisional dentro de un pleito (Regla 56) o como meta final de un litigio (Regla 57). Todo dependerá de cómo se solicita el remedio. Ello también significa que con tan sólo cambiar el título al escrito en que se solicita y elegir la Regla 56.1 ó 56.5, o por el contrario la 57 de Procedimiento Civil vigente, 32 L.P.R.A. Ap. III, R. 56.1, 56.5, 57, respectivamente, se puede obtener un remedio prácticamente igual; como orden de *"hacer o desistir"* al palio de remedio provisional (Regla 56) dentro de un pleito principal o al amparo del *"Injunction"* como pleito de remedio único interdictal, (Regla 57). ■

El hermano foro de instancia entendió que la parte demandante interesaba *"... un remedio en aseguramiento de la sentencia que, en su día, el tribunal pueda dictar en un procedimiento para dilucidar la custodia de los hijos menores de la demandante"*. Por tanto, concluyó *"... que el asunto debe ser atendido por una de las salas de Relaciones de Familia, de suerte que el magistrado o la magistrada que vaya a entender en la determinación de custodia pueda emitir los remedios provisionales --si alguno estima procedente-- que protejan su jurisdicción y su eventual determinación"*.

## II

Visto ello desde el ángulo de un litigio sobre custodia o como un litigio en que sólo se persigue recurrir al *"parens patriae"* del tribunal para mejor servir los intereses del menor respecto a su aparente y necesaria próxima intervención quirúrgica, para así determinar dónde y cómo ésta se habrá de efectuar (si debe ser operado fuera de Puerto Rico bajo posibles limitaciones en atención a las creencias religiosas de los demandados, o en Puerto Rico por el grupo de médicos del Centro Cardiovascular que hasta el presente le atienden), es plausible entender que se trata de un asunto que de ordinario se atiende en una de las varias salas de Relaciones de Familia adscritas al Centro Judicial de San Juan.

Ahora bien, el asunto cobra mucha urgencia ante la inminencia del traslado del menor fuera de esta jurisdicción para la anunciada evaluación médica y la alegadamente próxima intervención quirúrgica cardiovascular de alegado protocolo especial. Ante tal señalamiento y aún bajo la premisa de limitada información con que en ese momento contaba el foro judicial de instancia, entendemos que la Resolución y orden de Traslado dictada el 4 de mayo de 1999 en la causa KPE-99-1102(907) quedó corta y debe ser modificada para incluir un remedio provisional, en resguardo de la jurisdicción del tribunal, atendido el reclamo hecho y el deber de *"parens patriae"* que descansa en el foro judicial, independientemente de la sala a la que corresponda la pronta atención del asunto, según ello sea asignado por el compañero Juez Administrador Auxiliar de lo Civil en el Centro Judicial de San Juan.

En la temprana etapa procesal de este trámite, a la que nos tenemos que referir para efectos de este dictamen, el foro judicial no sabe a ciencia cierta si finalmente el asunto versará respecto a una determinación de custodia, en la que se dilucidará respecto a quién ésta se concederá, madre, padre o tíos; o si, por el contrario, se acude estrictamente al *"parens patriae"* del foro judicial, para resolver dónde y cómo se verificará la intervención quirúrgica que aparentemente necesitará próximamente el menor, independientemente del criterio que a tal respecto pueda albergar la madre o padre con patria potestad sobre el menor o los tíos con custodia temporal.

Aun entendiéndose que el primer criterio es el que priva, por razón de que los tíos sólo contaban con la custodia del menor y podría ser que la madre pudiera ejercer su obligación de patria potestad (salvo que por abandono un tribunal correctamente entendiese que no es merecedora de ello) el asunto no queda cumplidamente atendido conforme dispuso la resolución recurrida. En tal sentido y ante lo inminente del traslado del menor fuera

de la jurisdicción del foro anunciada bajo juramento, la resolución debió haber entonces acudido a las disposiciones de la Regla 56 de Procedimiento Civil, *supra*, (56.1 y 56.5) para detener el traslado del menor fuera de Puerto Rico y así preservar la jurisdicción del foro y evitar que el traslado de sala se convirtiere --realmente-- en una posible causa de desestimación de la importante petición, por academicidad o falta de jurisdicción, aunque eso no era lo que el Tribunal de Primera Instancia quiso disponer.

Tal salvaguarda de jurisdicción es de primordial importancia aun bajo el entendido de que la demanda se circunscribe a un asunto de custodia, que a su vez incide respecto a la decisión de dónde y cómo se habrá de efectuar la intervención quirúrgica cardiovascular del menor y que por ello no persigue como remedio final un entredicho o *"injunction permanente"*, lo que de por sí es muy debatible. ■

Atendidas todas las circunstancias que esta causa informa, tal dicotomía conceptual procesal podría resultar estéril si el foro judicial no ejercita su facultad para primero reservar el ejercicio de su jurisdicción, bien al amparo de la Regla 57 o Regla 56 de Procedimiento Civil.

## III

Es por ello que entendemos que en todo caso y de cualquier forma, bien al amparo de la Regla 56.1, 56.5 ó 57.2 de Procedimiento Civil, la resolución recurrida debió haber incluido una orden de naturaleza interdictal para evitar que el menor fuere sacado de Puerto Rico, hasta que otra cosa pueda el foro judicial determinar, luego de celebrada vista y contar con oportunidad de resolver la seria controversia planteada, conforme lo requiera el mejor interés y bienestar del menor. ■

### Dictamen

Conforme a lo señalado, se expide el auto de *certiorari* solicitado y se modifica la Resolución de instancia recurrida (del 4 de mayo de 1999 en el KPE99-1102) para añadir que:

*"Mientras el foro judicial de primera instancia a que esta causa sea reasignado no disponga de otra forma luego de oír a las partes y resuelva conforme entienda más adecuado para el bienestar del menor, se prohíbe, bajo apercibimiento de desacato, al Sr. Manuel Correa Deliz y su esposa Sra. Sonia Colón y cualquier otra persona que actúe por su conducto, trasladar fuera de Puerto Rico al menor Ramón Antonio Correa Deliz."*

Se remitirá de inmediato el mandato al foro de Instancia para que se cumpla con lo aquí dispuesto y calendarización prioritaria de la totalidad del asunto en controversia.

Se ordena la inmediata notificación a las partes y al Tribunal de Primera Instancia, Sala Superior de San Juan, a la atención del Juez Administrador Auxiliar, Asuntos de lo Civil.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 185

1. Debe aclararse que el médico que atiende al menor en Puerto Rico, lo es el Dr. Espinosa, cardiólogo pediátrico; pero el cirujano pediátrico anunciado como el que tendría a su cargo la cirugía en el Centro Cardiovascular del Centro Médico en Puerto Rico lo es el Dr. Sid Quintana. (Alegación Número 15 de la Demanda ante Instancia, Anejo II, Pág. 4).

**2.** Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 56.1.

**3.** En los Informes de Reglas de Procedimiento Civil, presentados en los años 1994 y 1996 por el Comité Asesor Permanente de Reglas de Procedimiento Civil de la Conferencia Judicial, adscrita a Tribunal Supremo de Puerto Rico y para explicar los cambios recomendados en ambas reglas, explica:

*"El problema remonta a las Reglas de Procedimiento Civil de 1958. El Comité Consultivo sobre las Reglas de Enjuiciamiento Civil (Comité) trabajó en la preparación de tales Reglas y sometió en 1954 al Tribunal Supremo el Borrador del Proyecto de Reglas de Enjuiciamiento Civil para el Tribunal de Justicia de Puerto Rico (Borrador). El Borrador contenía numerosas innovaciones de importancia. Una de las áreas que más profundamente quedaba alterada era la correspondiente a la de los remedios provisionales para asegurar la efectividad de las sentencias."*

En la fecha que el Comité sometió al Tribunal Supremo el referido Borrador, existía gran confusión en la jurisprudencia en torno a un asunto de tanta importancia práctica.

De acuerdo con el Comité, el principio sobre el cual descansaba la entonces vigente Ley para Asegurar la Efectividad de las Sentencias consistía en varias reglas específicas.

*"[...] [P]ara el aseguramiento de la sentencia de acuerdo con la naturaleza de la obligación cuyo cumplimiento se [reclamaba]. Es decir, cuando se [trataba] de la entrega de una cosa determinada, la prohibición de enajenar, cuando se [trataba] de una obligación de hacer, el embargo, cuando se [trataba] de una obligación de no hacer, la prohibición de hacer, y cuando se [trataba] de la obligación de pagar una suma de dinero, el embargo".* Borrador, pág. 141. Véase el historial legislativo de la Regla 56 publicado también en *Práctica Forense Puertorriqueña,* New Hampshire, Ed. Equity, 1978, T.1, págs. 231-234.

El Comité también encontró confusión en la jurisprudencia respecto a la facultad de los tribunales para emitir órdenes de cese y desista y órdenes para realizar actos específicos, ya que la Ley de *Injunction* y la Ley para Asegurar la Efectividad de las Sentencias contenían disposiciones similares sobre la procedencia de los remedios interdictales. Sobre este particular expresó lo siguiente:

*"Cuando por un lado se ha solicitado por un reclamante una orden del tribunal para determinados actos, basándose en las disposiciones de la Ley para Asegurar la Efectividad de la Sentencia, el tribunal ha sostenido que dicha medida no procede porque equivale a un injunction. Cuando por el contrario se ha solicitado la misma medida basándose en la Ley de Injunction se ha sostenido por el tribunal que la misma no procede porque existe un remedio adecuado en ley."* Borrador, pág. 146.

Con el propósito de corregir esta confusión, el Comité urgió adoptar como principio que en todo pleito el tribunal pudiere conceder cualquier remedio provisional sin que importara la naturaleza de la reclamación que originó el litigio. Explicó la nueva regla de aseguramiento, Regla 56.1 de 1979, como sigue:

*"En el texto propuesto por nosotros el aseguramiento puede decretar en cualquier pleito, y la medida que se tome es aquella que a solicitud de parte entiende el tribunal que sea necesaria o conveniente para asegurar el resultado del pleito en términos de lo alegado en la reclamación. Es obvio, que si un demandante reclama una cosa determinada, la medida más adecuada es la prohibición de enajenar o gravar pero es posible que dentro del pleito surjan circunstancias que justifiquen el tomar otras medidas. Así ocurre con cualquier otra obligación cuyo cumplimiento se reclame".* Borrador, pág. 141.

El *injunction* quedó así integrado a la nueva regla de remedios provisionales de 1958, desapareciendo como remedio extraordinario para también estar disponible en cualquier pleito como otro remedio provisional más.

El Tribunal Supremo de Puerto Rico adoptó la nueva regla de remedios provisionales íntegra, tal y como la sugirió el Comité. Sin embargo, cuando fue remitido el proyecto de Reglas de Procedimiento Civil a la Legislatura en 1958 fue añadida, no surgiendo del historial legislativo la razón, una regla específica sobre *injunction*, copiada de la Regla 65 federal, como si el asunto no apareciere cubierto por la Regla 56 sometida. Las Reglas 56 y 57 de las Reglas de Procedimiento Civil de 1979 no

contienen diferencias sustanciales en relación con las de 1958, por lo cual el problema ha continuado hasta el presente.

**4.** Se ha resuelto que aun en casos *"...de Hábeas Corpus para reclamar la custodia de un menor la función del tribunal no se limita a considerar el derecho del peticionario a la custodia, sino que tiene que considerar el bienestar y la conveniencia del menor o menores cuya custodia se reclama". Marín v. Serrano Agosto,* 116 D.P.R. 603, 605 (1985).

**5.** Similar esquema de protección contiene el Art. 10 de la Ley Núm. 132, 8 L.P.R.A. sec. 431, al otorgar competencia concurrente al Tribunal de Distrito o Juez Municipal en tales casos de emergencia, para luego referir al *"Tribunal de Primera Instancia, Sala de Relaciones de Familia, dentro de las veinticuatro (24) horas de haberse expedido dicha orden, ello a los efectos de que el Tribunal de Primera Instancia pueda continuar con los procedimientos de rigor en estos casos".*